May it please the Court. In May of 2007, Mr. King went for a first-time dental screening. Despite his protests, the dental staff performed a painful operation on him that was intended for another patient. Afterwards, the dental staff tried to convince Mr. King that his problem with another tooth and refused to provide him with adequate treatment. The District Court erred in sua sponte dismissing Mr. King's pro se complaint for two reasons. First, the Court erred in dismissing Mr. King's complaint for failure to exhaust his available administrative remedies. Based on the information Mr. King provided, a court could not sua sponte determine that Mr. King's administrative remedies were available. Additionally, the Court did not provide Mr. King with notice and an opportunity to respond to the Court's conclusions before dismissal. Second, the Court erred in dismissing Mr. King's complaint for failure to state a claim for each of his deliberate indifference claims. Mr. King sufficiently alleged the dental staff refused to verify facts that would lead them to conclude that they were operating on the wrong patient. Mr. King also sufficiently alleged that he was provided with grossly inadequate treatment when the dental staff only provided him with pain medication instead of performing a root canal, which is the standard of care for an exposed nerve. Okay, how do we know that a root canal is the standard of care? You said that one was ultimately performed on him when he was transferred to the different facility, but where is there evidence in the record that that was the standard of care? We proffered in our brief some statements from the ADA on the appropriate standard of care for an exposed nerve, which is a root canal. Mr. King did not specifically state that in his complaint, but he is a pro se plaintiff and giving him reasonable inferences, the root canal is the standard of care. And the fact that he ultimately received one is good evidence that he sufficiently alleged a claim for deliberate indifference for grossly inadequate treatment. But the difficulty that you have, and I think the difficulty that Judge Berger perceived, is simply the standard of the burden of proof, which is one of deliberate indifference. And what you seem to have here is a classic case of negligence, that there was a mistake made and it mixed up, it was a confusion of two inmates who had the same last name. And that's classic negligence, isn't it? I mean, we've all seen a thousand negligence cases in our lifetimes, and if it walks like a duck and quacks like a duck, then sometimes it really is a duck. And this I disagree, Your Honor, that this is not just simply negligence. I believe that Mr. King has sufficiently alleged deliberate indifference. This court and the Supreme Court in a footnote has stated that a prison official may not escape liability for deliberate indifference if he merely refuses to verify underlying facts that he strongly suspects to be true. And Mr. King protested that he was only there for a dental screening, and instead of stopping what he was doing, the dentist proceeded to drill his tooth. But there's more than just the protests that Mr. King told the dentist. Mr. King, the dental staff also failed to verify other information that would have alerted them that they were operating on the wrong patient. Mr. King was never asked if he was experiencing any pain. He was never asked to sign a consent form before they performed this operation on him. But the whole complaint is written in terms of mistake. I tried to count the number of times that the dentist, that the complainant had used the word mistake, and he says, by mistakenly performing, with mistaking me for the wrong in-line, which was the whole, then the first cause of action has said medical malpractice and medical mistake. And the whole time Dr. Aikman was under the impression I was someone else, they realized they'd made a mistake. I mean, how do you overcome the terminology of the complaint and the captioning of the account, which is all written in terms of they made a mistake? Mr. King does use the word mistake in the complaint, and there's no doubt about that. It's over and over and over again. Well, I'll also state that in paragraph 29 of his complaint, Mr. King also alleges that the operation was done on him maliciously and sadistically. So he does use that terminology as well, apart from mistake. But again, I would state that a court, because he is a pro se plaintiff, should construe his complaint liberally and not focus. But Judge Berger here referred to the repeated use of mistake, and I realize that you do make some allowances for pro se plaintiffs, but this isn't an arcane legal matter of pro se plaintiff or anyone would be able to say, wait a minute, this was malicious, this was deliberate indifference, they deliberately did this, et cetera, et cetera. But that's not what he's saying. What he's saying is there was a mix-up. We have two people with the last name of King, and there was a mix-up. I mean, it was unfortunate, but the burden of proof that you have is a big difference between a mistake and a negligent action and something that's deliberate. Well, again, Your Honor, Mr. King did use the word deliberate intent in his complaint, and he did say that the operation was done maliciously and sadistically in paragraph 29 of his complaint. But on top of that, pro se, if you look at the substance of his complaint, he has alleged a claim for deliberate indifference for operating on the wrong patient. The dental staff had numerous opportunities to stop what they were doing and confirm that they were Mr. King never alleged that the dental staff knew they were operating on the wrong patient. I mean, that would establish deliberate indifference, but it seems to me if they knew that they were and they just did it anyway, they wanted to drill this guy. But his failure to allege that, that they knew that they were doing this, doesn't that make a difference? No, Your Honor, not in this case, because Mr. King alleged that in three times that he told them he was there for a dental screening when he was in the chair, when they were approaching him with a needle, he asked the dentist what that was for. The dentist ignored that and proceeded to drill. And then even after he was numbed, he said he was there for a first time dental screening. That presents evidence that this dentist knew he was operating on the wrong patient, or in the alternative, that he failed to verify facts that he easily could have verified. What you're really making a case for, it seems to me, is that the dentist knew or should have known. And that is negligence, isn't it? Mr. King has alleged enough in his complaint for this motion to dismiss Phage that the dentist knew, not should have known, that he was operating on the wrong patient. But the way in which it's framed is the same day, the dental department had another inmate King on sick call appointment. When the plaintiff was seated, the dental staff had mistaken the plaintiff for the other inmate King on sick call. Now, maybe if the appointments were on different days or maybe if they had different names, if one was named King and the other was named Jones, then you'd raise your eyebrows and say, wait a minute, how can you mistake King for Jones? But when you have the same day, you have two Kings that were scheduled for sick call appointment, and the plaintiff says they mistook me for the other King, I mean, that is negligence in everything. Well, if that was all that Mr. King alleged, maybe we would be in a different situation here. But he didn't just allege that, well, there were two Mr. Kings and they operated on me instead of the other Mr. King. Mr. King alleged that he tried three times to inform that he was only there for a dental screening. And on top of that, Mr. King also alleged that they took an x-ray of his mouth and any dentist should have reviewed that x-ray and realized, oh, wait a minute, this is not a person who needs to have his tooth drilled. So it's not so simple. I don't understand. Counsel, I don't know why you're not distinguishing your case on the facts. It's more than just the wrong person that they mixed up. He alleges that there was nothing wrong with his tooth. And the point is, I don't know how you drill on a tooth that you don't see decay in. Even if it's the wrong person, why would you drill on a tooth that is, that's what you're saying. That's more than negligence. That's a deliberate indifference when you, even if you had the right, got them mixed up. That's understandable, perhaps. But it's not perhaps, but it's a person telling you, stop, I'm not the right person. Shut up, you don't know what you're talking about. I'm going to do it. That's basically what they did. And then you look at a healthy tooth and still drill it? If that's not indifference, what is? Absolutely. That's your argument, the facts, really. Yeah, absolutely, Judge Gregory. And I'll add that this Court has said that deliberate indifference can be established if it is so obvious. And in this case, to a dentist, it was not decayed. And again, looking at the x-rays that were taken, that this is not a person who needs to have his tooth drilled. No, this is all well and good, but it's classic hindsight, isn't it? No, not at all, Your Honor. It's not hindsight when a patient is sitting in the chair saying, I'm not here to be drilled. And it's not hindsight, as Judge Gregory said, when you look in the teeth, the tooth is not decayed and you still proceed to do the operation on him. I haven't been told I'm not the right person. Stop, stop, and you look at a healthy tooth. What hindsight is that? That's like, you know, anyway, go ahead. Yes, sir. Mr. King also sufficiently alleged a second deliberate indifference claim, which was from grossly inadequate treatment. And contrary to what the defendants and the lower court articulated, and as this court articulated recently in a case that was decided earlier this year, and I'm sorry I'll mispronounce the name, but Delonto v. Johnson, it was decided in 2013, early 2013, just because a plaintiff was provided with some treatment does not necessarily mean that the treatment was constitutionally adequate treatment. I guess this is from the magistrate's report or whatever, but it says next the court finds, maybe this was from Judge Berger's opinion, that the defendants did not act with deliberate indifference in the dental treatment for his complaints of sensitivity and pain. It says during a six-month period, I'm reading from page 31 of the joint appendix, during the six-month period, the plaintiff was evaluated approximately eight times by dental staff. Four x-rays were conducted. He was persistently prescribed pain medication. The x-ray results, he wanted treatment done to a tooth, but the x-ray results revealed that the tooth was a plaintiff refused treatment of the decayed tooth. In other words, he's protesting everything and he disagrees with the prescribed treatment, but that again, given the level of treatment that was provided, that's not deliberate indifference. I disagree, Your Honor. Again, just because he was provided with some treatment doesn't mean it was constitutionally adequate. Any competent dentist would have known that the treatment, the standard of care for exposed nerve is a root canal. Instead, they proceeded to see Mr. King for six months, treating him only with pain medication, which didn't alleviate his pain and is not adequate treatment. In fact, it's grossly If they had given him a root canal, we'd be here on that suit, which is that, look, the root canal was way more than I needed. It was a vast overreaction. They did it on the wrong tooth. I mean, whatever they did, they were going to be in court. I disagree, Your Honor. I mean, this is an extreme case. I mean, this is a case where this man, they operated on the wrong patient and then they ignored his complaints for six months. They didn't give him a root canal. They treated him with pain medication, which didn't alleviate his symptoms. Do you agree that he was evaluated eight times for sensitivity and pain from June 2007 until December 2007? He alleges in his complaint he was seen numerous times, yes, for pain. What? He was seen numerous times. I do think it is eight, Your Honor. Well, if someone's seen eight times, four x-rays were conducted, there's no dispute about that. Again, Your Honor, just because he was provided treatment doesn't mean it was adequate treatment. The standard of care here was to do a root canal. They treated it with pain. In conclusion, I request that the Court reverse the District Court's order and remand Mr. King's case for further proceedings. We thank you very much. Thank you, Your Honor. Mr. Giannola. Good morning, Your Honors, and may it please the Court, John Giannola, Assistant U.S. Before I begin, I'd like to point out the government does not represent Dr. Aikman, so nothing that I say should prejudice him in any way. First of all, it is our view that Mr. King has waived his rights for de novo appeal against all defendants except for Dr. Aikman and a Jane Doe dental assistant that wasn't actually named in the complaint. We think that his failure to address that and his objections waived that. Regardless, we're prepared to talk about the merits- What is your waiver argument? Well, our waiver argument is that he did not address any defendants except for Dr. Aikman, and he mentions a Jane Doe dental assistant in his objections. Those are the only defendants that he mentions in his objections. He points out in the beginning of his objections that he previously asserted claims against multiple defendants. He then goes on to say that he reasserts claims against just Dr. Aikman, and he mentions a Jane Doe dental assistant, but he did not actually name a Jane Doe dental assistant in the complaint. So our view is that that's waived. However, if the Court does not view that as waived, first I'd like to address the matter of deliberate indifference. We feel that Mr. King did not address his administrative remedies, and under that, at least under that theory, the Court was right to dismiss his claim. Second, it was also right because, as I believe Judge Wilkinson, you pointed out, I think what we're talking about at best is medical malpractice. We've heard a lot about drilling the wrong tooth. We've heard a lot about what the care should have been. Those are the facts, and I don't dispute those facts. I'm not — We heard about it. It was some rumor. Those are the facts. No, no, no, Your Honor. Those are the facts, as Mr. King pled that. I'm not disputing those facts. But those are general factors that tend to point towards negligence or malpractice, but they don't necessarily point to deliberate indifference. I believe Mr. King would have had to have pled that Dr. Aikman knew or should have known that he was the wrong person, that there was a high risk that he was the wrong person. He should have known it as a negative standard. That's correct, Your Honor. The evidence is that he did know because he could see, can't he? There's no evidence that the doctor was blind. There's no evidence that the doctor — And he could see that he was drilling on a healthy tooth. That's what's alleged because we had that depleting stage. He alleged that — and x-rays sort of support it. He's looking at a healthy tooth, and he drills on a healthy tooth after just being told by the person, hey, I'm just here for a clinical checkup. I'm not the person. You're looking at a healthy tooth. Why is that not — that's what indifference is, indifferent. Not that you have to prove someone he hated the person. Animus is not the issue. It's indifference, indifference to a fact that's right there, and that's what he pled. I agree with you, Your Honor, but I don't — I'm not — the facts that Mr. King pled are that Dr. Aikman made a mistake and mistook him for someone else. Perhaps — That's true. Maybe, maybe, maybe. But the point, though, he said it was healthy, and he had a healthy tooth, and he drilled on a healthy tooth. I'm not disputing those facts. I don't have any basis to dispute those facts, and I also do not know if Dr. Aikman could determine — I don't even know if it's possible for a dentist to determine by pure vision whether a tooth needs drilling or not. But those facts, they certainly sound, at least to me, and if they don't to you, I'm not telling you how they sound, but that sounds like a diagnosis is whether this tooth needs drilled. In fact, I mean, Mr. King admits or at least pleads that the dental staff believed that the next tooth over was decayed, and so it wouldn't be the case that if he — this isn't the case before us, but presumed that they had drilled the decaying tooth instead of the healthy tooth, that that doesn't come to deliver indifference. That comes to a misdiagnosis. It would, and your facts, your hypothetical, because at least he's drilling on a tooth that's decayed. That's a totally different case. Right, but in this case, we don't have — he did not plead that. He did — at least I don't see where he pled that Dr. Aikman knew that that was a healthy tooth. He pled that he insists it's a healthy tooth, and I have no basis to dispute that. He didn't tell me. I know Iqbal and Twamle has been incredibly and broadly being interpreted, but you have to plead. My tooth is healthy. Healthy means healthy. Decayed means not healthy, right? You drill on a healthy tooth. You mean he has to say, oh, yes, and he looked at the tooth, and he saw it was healthy. It was pristine, and then he proceeded to drill. It's not that level. He said it was a healthy tooth. I agree, Your Honor, and if this were a negligence or a malpractice case, I think that that would be very important. We're getting far into the weeds of dental practice. We're getting far into the weeds of dental practice. It's not clear to me that an on-site inspection — it's not clear to me why he would have wanted to drill into a tooth that he knew would be healthy. There's no indication that he would want to drill a tooth that he knew would be healthy. It's not clear to me that someone can simply determine right on an on-the-spot inspection or something what the status of a tooth is. There was a mix-up here, and the mix-up is unfortunate, but you see this is a garden variety. It's not an unusual case. It's a garden variety, classic case of run-of-the-mill negligence. The courts across the country treat these kinds of cases where there's a mix-up and somebody should have known this and somebody should have known that and everything. The courts across the country treat this as garden variety negligence. It doesn't mean somebody's blameless. It certainly does not. It's not an absolution. All the Supreme Court wants us to do is understand the difference between negligence and deliberate indifference, and there's a stark difference. I agree, Your Honor. I think if Mr. King has pled anything, he's pled a negligence case. For example, you mean if you had a case where the person's right leg was gangrenous, visibly gangrenous. That's what the chart said, and then the doctor came in and took off the left leg. There was nothing wrong with it. That would just be negligence. I mean obviously it would depend on the specific factors, but I think that at least- The doctor told you the right leg is gangrenous, and then they take off the left leg that's pristine. That would just be negligence, right? I think it will. I mean first, just to discuss the pleading, to plead a deliberate indifference, you would in that situation, you would have to plead at least that the doctor knew that he was operating on the wrong leg or that he knew there was a substantial risk. That would have to be part of the pleading if you were pleading a deliberate indifference. Otherwise, I think that such a scenario could certainly fall into. What he did is that my left leg was healthy, and the chart said the gangrenous right leg, and they took off a healthy leg. That's all you could plead. That's all he pled, but I think under Farmer v. Brennan, he has to establish that the defendant knows and disregards an excessive risk to inmate health and safety, but he didn't plead that in this matter. There's a much greater excessive risk to take my good colleague's hypothetical. There's a much greater excessive risk in taking off a leg than in filling a tooth. With all due respect, a tooth and a leg are really not quite synonymous. I mean both are important, but there are many teeth, and there are only two legs. And if you're talking about amputating a leg, yes, you're going to do a whole lot of investigation. But these are different situations, are they not? They sound to me as if they are a different situation, but again, I'm not a doctor. This goes to the pleading stage, so I'm willing to accept a hypothetical that doesn't involve teeth. I think, though, what has to happen is Mr. King had to plead that Dr. Aikman knew. I mean, it's more than he should have known. He had to have known that he had the wrong person. He had to have known that there was an excessive risk he had the wrong person, and that's just, it's not in the pleadings. Other than the fact that he told him he was the wrong person? Well, I don't, and forgive me, Your Honor, I did not see that in the record. I think if you look at paragraph 12 of the complaint, you'll see that even the inmate admitted that he was unaware at the beginning that they had misidentified him. I believe that he asked what the needle was for. He may have questioned why he was being drilled, and I'm not saying it's not in there, but I couldn't find in the record where he actually pled that he told them he was the wrong person, only that it was- I'm not here just for a clinical check. You're saying that's not in the record? No, no, I'm saying what's in the record is that he didn't tell them they had the wrong person. I know you're in prison, but you're still not children of a lesser God. It seems to me somebody's there before you, and they tell you, I'm not the person. You got the wrong person, and then you said, oh, shut up. I know what I'm doing. I'm doing this. What's the needle for? Shut up. And then you look at at least, I think in this pleading, a healthy tooth and drill on it. What is the level of indifference? I mean, I think if you were in a situation in private dentistry and not an inmate, I think you would find some indifference in it. I would say that that would at least rise the level of, or it could rise the level of negligence or malpractice. I think the difference between those two statements between I'm the wrong person and I'm just here for a cleaning is, and even though they sound like they're very lay phrases, one is innate knowledge that you know yourself. The prisoner knows who he is, but he doesn't necessarily know why he's there, especially since he's admitted this is his first time to the dentist. And I'm not going to speculate as to Dr. Aikman's practice, but it would not surprise me to find that prisoners often may dispute the course of treatment, or they may often not care to be drilled. So I think there is a difference between saying I'm a different person, which I cannot find in the record, and between saying I'm not here to be drilled. No, it's not in the record. I don't see it. I know that opposing counsel has put that in their briefing, but I could not find it. In fact, I believe, as I mentioned before, paragraph 12 of the complaint seems to at least imply that he was unaware until after the drilling that they had mistaken him for someone else. No, I think the mistake was in the sense that he was not here for that procedure. Right. I think he at least implies that there was a king there who was there for that procedure. And what about the course of treatment afterwards? The course of treatment afterwards, I believe, as Your Honors pointed out, they saw him, I believe, eight times over approximately six months. There were four x-rays. He was given pain medicine for pain. He was given antibiotics for potential infection. Ultimately, I believe they offered to pull his tooth. Even if we concede those were the incorrect course of treatment, that's not indifferent. It's just wrong. Even if we concede that they're wrong, it's not indifferent. It may not be the course that he wanted, but it was still a course of treatment. It still attempted to address his pain. It still attempted to address what they thought were the appropriate dental measures. I know, of course, obviously the appellant thinks the whole matter, but that could be severed in the sense of claims. That wouldn't preclude the claim for drilling on the healthy tooth, even if there was a question whether or not the ongoing treatment, as the section that Judge Wilkinson read about the eight, oh, that's posterior drilling. Agreed, Your Honor. Okay, all right. Well, there were two different claims. Right. But one of the counts here was it referred to the later treatment. Right, Your Honor. I mean, he makes two separate claims. The first is that they drilled the incorrect tooth. The second is that afterwards they then treated their own mistake incorrectly. I think the second one, at least in my mind, is a little bit clearer because he did receive multiple treatment. He did receive pain medication. He did receive antibiotics. Even if it were wrong, it does not appear to rise the level of indifference. It does not shock the conscience, I think, is one of the standards. But those are separate claims. He said you don't represent the doctor. That's correct, Your Honor. He's not an employee. He is not. He's an independent contractor. He's a contracted physician. That's correct, Your Honor. He paid for his services. That's correct. And I'd like to briefly go back to exhaustion. I think there are two reasons why the claim was dismissed. The first was that Mr. King failed to exhaust his claims. I think it's pretty clear from paragraph, I believe it's 28 in his complaint. He admits on the face that he did not exhaust his administrative remedies. I think at some point that should shift the onus onto him to show that he did exhaust his administrative remedies. And when he failed to do that, they dismissed. So I think- Administrative remedy? Yes, Your Honor. Under 28 CFR 542.15, his administrative remedy is exhausted when the general counsel has reviewed his claim, and that is generally brought about by a form called the BP-11, Bureau of Prisons 11. Mr. King didn't offer any evidence that he had filed a BP-11. Well, he explained the circumstances of that, did he not? Well, he explained the circumstances under the BP-9 and the BP-10, that those were delayed. But he never actually claimed that he filed a BP-11, except in his brief. He mentioned- Is that a necessary form? That is a necessary form to exhaust your administrative remedies in front of the Bureau of Prisons. And who is the BP-11 file group? I'm not sure the specific person, but it's generally directed towards general counsel of the Bureau of Prisons. And what information does that contain? Why is the exhaustion requirement important, in your view? I'm sorry, exhaustion in general or in this particular matter? Well, in this particular matter, this would obviously give the prison a chance to address, at least partially. I know that he's asking for monetary rewards, but this would at least give the prison a chance to address the issues. It would give them a chance to address any issues they may have with Dr. Aikman. I mean, just the general principles of exhausting your administrative remedies. Does the prison normally give reasons when it- I mean, how would the exhaustion have played out here? I don't know. I'm hesitant to speculate, but- Does the general counsel's office make some sort of ruling? They would. My understanding is they would provide a ruling or at least a reason why they were denying or what type of relief they were granting, Mr. King. What relief does the general counsel's office and the Bureau of Prisons have the right to award? I'm not sure about the total extent that they're allowed to award, but in this case, they could address the situation. I don't think they're allowed to dispense money. I know he's seeking a monetary reward, but they could address the situation administratively. They could address the procedures done by Dr. Aikman. They could address Dr. Aikman's employment himself, something of that nature. They could have some administrative relief. In Form 9 and 10, the issue has been joined factually on this issue, and everything is before the administrative agency. Nothing else further here. I'm sorry? There's nothing new here. You had all the facts before in terms of – as a matter of fact, you're not sure yourself what the counsel's office could do. You said they couldn't give money. That's right, Your Honor. I don't know what new information he could have provided on a BP-11 except to explain his delay in filing his earlier form. But I do know that exhaustion is explicit, that it has to be filed, that it has to be brought to the general counsel's attention. I think – I believe it does have to be done by a BP-11. Is this a statutory or regulatory? I believe it's 28 CFR 542.15. This was another ground on which Judge Berger dismissed the case? Yes, Your Honor. There were two grounds. The first was failure to exhaust, and the second was failure to state a claim. Do you have anything further? No, Your Honor. Ms. Taylor, you have some time for rebuttal. Thank you, Your Honor. Thank you, Your Honor. Did you just preliminarily – since it was one of the two grounds that the district court dismissed on, I'm just curious about it. What do you – because you didn't get a chance to address it, really. What do you have to say about the exhaustion point? Well, Your Honor, thank you. Based on all the information Mr. King presented, he's shown that he's made substantial efforts to exhaust his administrative remedies, but the actions by prison officials made it more difficult for him to do so in the most – in a timely manner. And I will say, Your Honor, I know that it wasn't in his complaint, as he's not required to allege exhaustion in his complaint or specific facts related to exhaustion in his complaint under Anderson and Jones from the Supreme Court, but Mr. King did file a BP-8 form. He filed a BP-9 form. He filed a BP-10 form after his numerous requests to obtain one. He finally got one. And then he did file the BP-11 form. He filed it on June 3, 2008. And then six months later, he filed his complaint. Was the problem with it timeliness? Yes. Both his BP-11 and BP-10 forms were denied as untimely. Do you dispute that? I dispute that they shouldn't have been denied for untimely because they were – those particular remedies, particularly the BP-10 form, was made unavailable to him by the prison officials. And I'll state with the regulation associated with the – well, first of all, Mr. King did not receive the warden's response to the BP-9 form until 21 days after it was dated. So there's a 21-day delay in the delivery of that response. And the regulation that the district court and the government rely upon to say that he should have filed his BP-10 form earlier states, if an inmate does not receive a response within the allotted time for the reply of the BP-9 form, including extension, that an inmate may consider the absence of response to be a denial at that level. The language in the regulation is may consider, not must consider. It's permissive language, not mandatory language. So on the plain language of the regulation, Mr. King is not required to consider the warden's lack of response after 20 days of denial. He only may do so. Would exhaustion have served a useful purpose here? And as much as the Bureau of Prisons is the agency which sees a lot of these malpractice claims and is sort of familiar with the setting in which the dental services are rendered and they would have access to prison records and would have provided some sort of context or explanation for what had happened, I mean, could exhaustion serve a useful purpose on this? Well, Mr. King was seeking to, I mean, in terms of drilling on the wrong patient, I mean, that had happened. You know, he did request monetary damages for that, which the prison could not award him. In terms of the inadequate treatment, they could have reviewed those and asked that he be provided with adequate treatment, although that would be, they would be talking to the doctors. But the bigger point is that he even, he proceeded through the process here. He didn't stop because he had a few hurdles that were thrown up in front of him from prison officials. He completed through the process and completed it. The additional things I wanted to state was in the record with regards to Mr. King not alleging what he tried to inform him. In paragraph 28 of the complaint, Mr. King says, the actions of the defendants for not ensuring proper care, safety, identity of the plaintiff before performing dental treatment of a filling on a tooth that did not need filling. Injecting the plaintiff with Novocaine, using physical force against the plaintiff when he tried to inform them that he was only there for a first time examination. The defendants, without need or provocation, performed the surgery on it. And then he also adds that it was done maliciously and sadistically. And again, I just want to emphasize that the standard here. One of the things that Iqbal and Twombly say is that they're very tough on even conclusory, on conclusory pleadings, where, in other words, you just can't plead the standard and say he acted or she acted with deliberate indifference. That doesn't get you over the Iqbal-Twombly test, that kind of use of the legal standard. The difficulty here, I think, in terms of Iqbal and Twombly is it's pleaded in terms of mistake and the facts of two inmates showing up on the same day at roughly the same time with the same last name with related or common dental complaints. It virtually screams out negligence. I disagree, Your Honor. First of all, it's not so simple as that. I mean, it wasn't just two people showing up on the same day. It was they showed up on the wrong day. He made protests. I'm not the right guy. I'm only here for a dental screening. And as Judge Gregory has pointed out, looking at his tooth, he alleged it was a healthy tooth, and he alleged that they drilled on his healthy tooth. That constitutes deliberate indifference. And I'll just add really quickly for the inadequate treatment, if the court looks at the Delanto case, it's very similar to Mr. King's. They particularly have a good quote on there on page 526 that basically states that just because, and I won't read it, but just because you provide some treatment doesn't mean that it's constitutionally adequate. And giving somebody pain medication when surgery is necessary constitutes or can constitute deliberate indifference. And that's Mr. King's situation here. Thank you, Your Honor, for your time. And, again, we respectfully request that the district court's decision be reversed. Thank you so much. Thank you, Your Honor. We'll come down. Ms. Taylor, I see that you're court assigned, and I really want to express the appreciation of the court. You've done a fine job with this case, and we do appreciate it. Thank you, Your Honor. We'd like to come down and greet you both, and then we'll take a brief recess. Let's do it all at the end. Is that okay? Can we just wait until the end? This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Barbara Milano Keenan